UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMIE CHRISTMAS,

    Plaintiff,

v.                                                   Case No:   2:17-cv-87-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Tammie E. Christmas' Complaint (Doc. 1) filed on February 9, 2017. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.     Procedural History

On October 12, 2011, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, asserting an onset date of October 1, 2011. (Tr. at 136, 137, 315-325). Plaintiff's applications were denied initially on December 15, 2011 and upon reconsideration on January 31, 2012. (*Id.* at 136, 137, 160, 161). An initial hearing was held before Administrative Law Judge ("ALJ") Joseph L. Brinkley on September 11, 2015. (*Id.* at 83-119). The ALJ issued an initial unfavorable decision on September 27, 2013. (*Id.* at 165-178). The ALJ found Plaintiff not to be under a disability from October 1, 2011, through the date of the decision. (*Id.* at 177). The Appeals Council granted review of Plaintiff's decision on April 11, 2015. (*Id.* at 182-185). The Appeals Council vacated the ALJ's decision and remanded the action to the ALJ. (*Id.* at 183).

The ALJ held a second hearing on September 8, 2015. (*Id.* at 54-82). After this hearing, the ALJ issued an unfavorable decision on October 20, 2015. (*Id.* at 28-47). On December 29, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in this Court on February 9, 2017. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 22). This case is ripe for review.

### C.     Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functioning capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2013. (Tr. at 31). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2011, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "(1) diabetes mellitus; (2) status-post diabetic ketoacidosis; (3) diabetic neuropathy; (4) alopecia; (5) obesity; (6) anxiety; and (7) depression." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.*).

At step four, the ALJ found the following:

> [T]he claimant has the residual functional capacity to perform light work, as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except she: can occasionally use the right-dominant upper extremity to handle and grasp; has no limitations with fingering with the right-dominant upper extremity; can occasionally feel with the bilateral upper extremities, but has no limitations with grasping, fingering, or handling with the left upper extremity; can frequently use the lower extremities to operate foot and leg control devices repetitively; can occasionally climb ramps and stairs, balance, kneel, and stoop; can never crawl, crouch, or climb ladders, ropes,

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

3

or scaffolds; must avoid concentrated exposure to humidity, extreme hot or cold temperatures; must avoid concentrated exposure to workplace hazards such as unprotected heights, dangerous machinery, and uneven terrain; is limited to unskilled, simple, routine, repetitive tasks; can engage in superficial contact with the general public (meaning she can work in the same vicinity and on occasion may have indirect communication with the public as in extending greetings when passing, but no ongoing, direct interaction); can occasionally engage in team or tandem work; and is limited to occupations that do not require the performance of high-volume production quotas or fast-paced assembly line work.

(*Id.* at 34).

The ALJ determined that Plaintiff was unable to perform her past relevant work as a nursing assistant and human service worker. (*Id.* at 45). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 46). The ALJ noted that the vocational expert identified the following representative occupation that Plaintiff was able to perform: (1) fruit distributor, DOT # 921.687-046,[2] SVP2, light exertion.[3] The ALJ concluded that Plaintiff was not under a disability from October 1, 2011, through the date of the decision. (*Id.*).

## II.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence

---

[2] As highlighted by Plaintiff in her brief, the code for fruit distributor is DOT # 921.685-046 and not DOT # 921.687-046. (Doc. 20 at 14). The Court addresses this discrepancy in the section concerning the vocational expert's testimony.

[3] "DOT" refers to the *Dictionary of Occupational Titles*.

must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## III. Analysis

On appeal, Plaintiff raises three (3) issues. As stated by Plaintiff, they are:

1) The ALJ's finding that the Plaintiff can perform a range of light work is not supported by substantial evidence because it conflicts with the regulatory definition of light work, as described in 20 C.F.R. §§ 404.1567, 416.967 and SSR's 83-10, 83-14, in light of her non-exertional limitations.

2) The credibility assessment is not supported by substantial evidence because the ALJ discredited Plaintiff in large part due to her failure to follow prescribed treatment, but failed to consider if Plaintiff had an acceptable reason for failing to follow prescribed treatment and engaged in improper "sit and squirm" analysis, in violation of 20 C.F.R. §§ 404.1530, 416.930.

3) The testimony of the vocational expert ("VE") is not supported by substantial evidence because the VE did not cite to a valid job listed in the Dictionary of Occupational Titles and the job cited is not within Plaintiff's residual functional capacity.

(Doc. 20 at 3). The Court addresses each issue in turn.

### A. Ability to Perform Light Work

Plaintiff argues that the ALJ erred in finding Plaintiff could perform a range of light work with several additional limitations. (Doc. 20 at 7). Plaintiff states that the ALJ limited Plaintiff's ability to perform work: (1) to the occasional use of her dominant right hand; (2) to unskilled work with several social limitations; and (3) to be precluded from performing any high-volume or production-paced assembly work. (*Id.*). Plaintiff contends that these limitations preclude Plaintiff from performing light work as defined in 20 C.F.R. §§ 404.1567(b). The Commissioner argues that substantial evidence supports the ALJ's findings regarding Plaintiff's limitations and supports the ALJ's findings that Plaintiff is able to perform a range of light work with additional limitations. (Doc. 24 at 12-13).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Here, the ALJ found Plaintiff capable of performing light work with limitations. The Code of Federal Regulations defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted

may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). In addition, Social Security Ruling 83-14 provides:

Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

SSR 83-14.

The ALJ carefully considered Plaintiff's limitations and determined that Plaintiff was incapable of performing a *full range* of light work. (Tr. at 34-45). Moreover, the ALJ determined Plaintiff was unable to perform her past relevant work and relied upon a vocational expert to determine Plaintiff's capability of performing other work in the national economy. (*Id.* at 46-47). Based upon the vocational expert's testimony, the ALJ determined Plaintiff capable of performing the requirements of a representative occupation, namely fruit distributor and the size of the occupational base being 2,000 jobs regionally and 40,000 jobs nationally. (*Id.* at 46). The Court finds that Plaintiff's limitations do not preclude a finding that she is capable of performing light work with certain limitations. The Court further finds that the ALJ carefully considered Plaintiff's limitations and the impact they have on the occupational base, as evinced by the ALJ clearly articulating Plaintiff's limitations in the hypothetical to the vocational expert and relying on his expert opinion to determine the impact Plaintiff's limitations have on the occupational base, if any. (*See id.* at 69-74).

Plaintiff also argues that the vocational expert failed to explain the impact of Plaintiff's specific inability to use her dominant extremity more than occasionally during the workday. (Doc. 20 at 8). The vocational expert's testimony belies this argument. The vocational expert testified:

> Well, in the Dictionary of Occupational Titles -- it's consistent with the Dictionary of Occupational Titles. I would note that the Dictionary of Occupational Titles does not bifurcate use of the upper extremities, in terms of frequent, occasional or continuous or not at all, between a right or left upper extremity or dominant or nondominant. They give just a single designation, so when they do that, in other words, if they say a job requires frequent reaching, handling, fingering or feeling, I assume that that means that that needs to be done by both upper extremities, since it's not bifurcated.

(Tr. at 73). When responding to the following question about the fruit distributor position, the vocational expert further clarified:

> Q    Okay, so, is it your opinion that that's not required, the use of the right upper extremity for up to a third of the day?
> [VE]    That's a designate -- as a designate of occasional for handling and reaching that would be correct. Yes.

(*Id.* at 78). The vocational expert testified that he assumed that the position of fruit distributor requires only the same level of reaching, handling, fingering, or feeling to be done by both upper extremities. (*Id.* at 73). Further, the vocational expert testified that fruit distributor requires only occasional use of upper extremities for handling and reaching. (*Id.* at 78). In sum, the vocational expert testified that the same level of frequency for use of upper extremities for the fruit distributor position and that level of frequency is occasional. (*Id.* at 73, 78). The ALJ properly relied on the vocational expert's testimony to determine Plaintiff capable of performing representative occupations, such as a fruit distributor, even with a limitation of occasional use for the upper extremities in the workday. Accordingly, the Court finds that the ALJ's RFC finding and reliance on the vocational expert's testimony supported by substantial evidence.

### B. Credibility Assessment

Plaintiff argues first that the ALJ erred in penalizing Plaintiff's credibility by finding that Plaintiff failed to comply with treatment and medication recommendations from her physicians. (Doc. 20 at 11). Second, Plaintiff argues that the ALJ erred in failing to consider the impact of Plaintiff's mental impairments on her ability to comply with treatment. (*Id.* at 12). Third, Plaintiff contends that the ALJ engaged in "sit and squirm" jurisprudence. (*Id.*). The Commissioner argues that substantial evidence supports the ALJ's subjective-complaint analysis. (Doc. 24 at 6).

The Eleventh Circuit has held that "'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,'" but "'poverty excuses noncompliance.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). If a plaintiff fails to comply with prescribed treatment, then the ability to afford medication is a factor that should be considered in the administrative process. SSR 16-3P, 2016 WL 1119029, at *9 (Mar. 16, 2016). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines that the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011). If the failure to follow prescribed medical treatment is a substantial factor in an administrative law judge's decision to discredit a plaintiff's credibility, then the ALJ should inquire further as to

9

whether a plaintiff was able to afford the prescribed medical treatment before holding noncompliance against a plaintiff. *Moffatt v. Comm'r of Soc. Sec.*, No. 8:13-CV-2853-T-36EAJ, 2015 WL 1038014, at *4 (M.D. Fla. Mar. 10, 2015).

Further, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Additionally, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The Court addresses Plaintiff's three (3) credibility arguments separately.

### 1. Compliance with Medical Treatment

Plaintiff asserts that she had financial difficulty in affording prescribed treatment. (Doc. 20 at 10). Plaintiff argues that the ALJ penalized Plaintiff's credibility finding based upon her inability to obtain prescription medications. (*Id.*). The Commissioner argues that the ALJ based his assessment of Plaintiff's subjective complaints on many factors, including the objective medical evidence, Plaintiff's own reports of symptoms, and Plaintiff's activities. (Doc. 24 a 11-12).

Here, the ALJ found that Plaintiff's medially determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely credible. (Tr. at 35). Later in the decision, the ALJ states that he did "not find the claimant to be credible." (*Id.* at 42). The ALJ noted throughout the decision that Plaintiff was noncompliant with treatment; specifically, she did not take her medications as prescribed. (*Id.* at 36, 40, 42-43).

The issue then becomes whether the failure to take medications and comply with treatment due to lack of funds is a principal or main factor in the ALJ's decision to find Plaintiff not credible. *See Moffatt*, 2015 WL 1038014, at *4. The ALJ recognized that Plaintiff's noncompliance with taking her medications may "indeed be related to at least some degree to her diminished financial resources, as evidenced in the post-hearing records," but found that this reason did not excuse Plaintiff from telling the truth during her testimony. (Tr. at 43). Here, the ALJ found many reasons not to find Plaintiff credible. The Court highlights two (2) such reasons below and then analyzes the ALJ's findings.

### a. Inaccurate and Conflicting Statements

The ALJ noted that Plaintiff testified at the first hearing that she always takes her medications for diabetes, when in fact, the ALJ determined that throughout the record it is clear that Plaintiff does not. (*Id.* at 42, 43). Further, the ALJ states that Plaintiff had ample opportunities during the second hearing to correct her testimony, but she did not. (*Id.* at 43).

The ALJ noted that Plaintiff told Haleh Tabrah, M.D. that she had earned a GED, but this report contradicts Plaintiff's testimony at the first hearing that she had never gotten her GED. (Tr. at 41, 90, 613).

The ALJ focused on Plaintiff's testimony that she is "bed-ridden, a near-invalid, unable to do things for herself and afraid to leave the home." (*Id.* at 43). The ALJ noted that Plaintiff testified that she was unable to do anything and similarly included in her December 2011 Function Report that her children did almost everything for her. (*Id.* at 43-44). Yet, the ALJ found that these statements contradict Plaintiff's report to the consultative examiner that "she is able to cook, clean, do laundry, and shop. She also stated that she showers and dresses independently, as well as watch television, reads books, and goes shopping." (*Id.* at 44, 505).

11

The ALJ concluded that Plaintiff's activities at times are greater than what she generally reported. (*Id.* at 44).

The ALJ also noted that Plaintiff reported that she "barely goes anywhere" and does not participate in social activities, but also reported that she goes to church once a month and sometimes goes shopping with her daughter. (*Id.*).

The ALJ also questioned Plaintiff's honesty when reporting to her medical providers as evinced by her reporting to the consultative examiner that she used chewing tobacco every day since she was a child, but when asked about tobacco use by her treating sources, she denied using tobacco. (*Id.*).

### b. Medical Records That Conflict With Plaintiff's Subjective Complaints

The ALJ noted that Dr. Tabrah recommended that Plaintiff avoid opiates "'unless absolutely necessary'" and remarked that Plaintiff's "'pain seems out of proportion to underlying medical cause.'" (*Id.* at 42, 616). The ALJ noted that during the period from October 16, 2013 through May 21, 2015, the records indicate that Plaintiff's musculoskeletal, neurological, skin, diabetic foot, sensory, and psychiatric clinical examinations are largely unremarkable. (*Id.* at 42). Further, the ALJ remarked that few, if any, objective signs of diabetic neuropathy were recorded. (*Id.*).

The ALJ also noted that within these records, Plaintiff was noncompliant with her medications, and also noncompliant with the lifestyle recommendations including repeatedly being encouraged to increase her physical activities. (*Id.*). Regarding Plaintiff's testimony that she is "bed-ridden, a near-invalid, unable to do things for herself and afraid to leave the home," the ALJ noted that Plaintiff shows no signs of muscle atrophy that is a "common side effect of prolonged or chronic underuse of a muscle." (*Id.* at 43).

### c. Analysis

The ALJ acknowledged that at times, Plaintiff's noncompliance with taking her medications may be related, at least to some degree, to her inability to afford her medications. (Tr. at 43). But this reason was not the ALJ's sole or principal factor in finding Plaintiff not credible. Rather, the ALJ listed many reasons, including Plaintiff's many inaccurate and conflicting statements – from Plaintiff testifying that she is unable to do anything but reporting that she is able to cook, clean, do laundry, shop, watch television, and reads books – to incorrectly relating her tobacco use. (*Id.* at 43-44). Further, the ALJ found that the medical reports do not support Plaintiff's subjective complaints. The Court determines that the ALJ found Plaintiff not credible for reasons other than solely her alleged inability to afford treatment and medication. Accordingly, the Court finds that the ALJ did not err in the credibility finding.

### 2. Impact of Mental Impairments

Plaintiff argues that the ALJ erred by failing to consider the impact of Plaintiff's mental impairments on her ability to comply with treatment. (Doc. 20 at 12). Plaintiff cites to one record from Plaintiff's primary care provider that shows that Plaintiff does not understand diabetes well or the consequences of it. (*Id.*). Plaintiff also asserts that she has sought psychiatric care and further cites to a report that notes that she suffers from hallucinations and mood disorder. (*Id.*). Plaintiff argues that rather than considering the impact of Plaintiff's mental impairments on her ability to comply with treatment, the ALJ mischaracterized the evidence, implying that Plaintiff chose hospitalization over compliance with treatment to enhance her disability claim. (*Id.*). The Commissioner responds that the ALJ properly considered Plaintiff's mental impairments when determining Plaintiff's credibility. (Doc. 24 at 9-10).

First, upon review of the medical record cited by Plaintiff, Plaintiff self-reported to the medical professional that "she has no understanding of diabetes or its complications." (Tr. at 714). The notes indicate that the medical professionals provided diabetic education to Plaintiff regarding her medication and Plaintiff "verbalized understanding of how to dose lantus daily +1 unit until 100 or less starting at 30 units today." (*Id.* at 713). Further, the medical professional referred Plaintiff for additional education regarding diabetes, discussed topics relating to her diabetes, and educated her on diabetes and its complications. (*Id.* at 716). There is no indication from the medical professional that Plaintiff was unable to understand diabetes or the complications stemming from it. (*Id.* at 714-16).

Second, the ALJ thoroughly considered Plaintiff's mental health treatment records. (*Id.* 38, 41, 42, 39). On the one hand, the ALJ noted that, Dr. Tabrah found in June 2013 that Plaintiff had poor judgment and insight; was depressed and irritable; but had appropriate mood and affect. (*Id.* at 39). But on the other hand, the ALJ noted that Dr. Tabrah determined that Plaintiff: (1) had no abnormalities in cognitive functioning; (2) had coherent, logical and goal-directed thought processes; (3) had no suicidal or homicidal ideation; (4) had normal speech; and (5) was fully oriented and cooperative. (*Id.*). Dr. Tabrah recommended that Plaintiff visit an endocrinologist and attend diabetic education courses. (*Id.* at 40). Dr. Tabrah never indicated that Plaintiff was unable to understand or be educated on her medical condition. Further, the ALJ noted that in December 2011, Plaintiff reported of hallucinations, but the record is "remarkably absent elsewhere" of any reference to hallucinations except for Plaintiff's own testimony. (*Id.* at 38).

The Court finds that the ALJ thoroughly considered Plaintiff's mental impairments in the decision, including whether Plaintiff's mental impairments impact Plaintiff's ability to comply

with treatment. The Court finds that substantial evidence supports the ALJ's decision as to this issue.

### 3. Sit and Squirm

Plaintiff contends that the ALJ engaged in "sit and squirm" jurisprudence. (Doc. 20 at 12). Plaintiff argues that the ALJ discredits Plaintiff because she was able to sit through the hearing with her representative and a hearing reporter and claims that the ALJ concluded that Plaintiff has only moderate social limitations due to her mental impairments. (Doc. 20 at 12). The Commissioner responds that the ALJ did not engage in such a practice. (Doc. 24 at 12).

The concept of "sit and squirm" jurisprudence denotes that an ALJ's denial of a claim is based on the claimant's failure to exhibit certain traits that the ALJ has subjectively determined would exist if the claimant were truly disabled. *Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *12 (N.D. Ala. Mar. 31, 2017) (citing *Freeman v. Schweiker*, 681 F.2d 727, at 731 (11th Cir. 1982)). Even though "sit and "squirm" jurisprudence is prohibited, an ALJ is permitted to consider a claimant's appearance and demeanor at a hearing. *Id.* (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985)); *see also* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4); SSR 96-7p, 1996 WL 374186, at *5, *superseded by* SSR 16-3p.

In accordance with Eleventh Circuit case law and SSR 96-7p, the ALJ properly considered Plaintiff's demeanor and disposition at the hearing. The ALJ mentioned that Plaintiff initially reported that "she barely goes anywhere, does not participate in social activities, and too many people include more than her." (Tr. at 44). The ALJ then observed that Plaintiff "sat in the hearing room with her representative and the hearing reporter without problems; she lives with her two children ages eighteen and twenty-one; goes to church once a month; sometimes

goes shopping with her daughter; and even rode with her daughter to the hearing." (*Id.*). Clearly, the ALJ's mention that Plaintiff sat through the hearing with others present does not rise to the level of "sit and squirm" jurisprudence. The Court finds that the ALJ did not err in observing Plaintiff's demeanor at the hearing.

Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

### C. Testimony of the Vocational Expert

Plaintiff argues that the ALJ erred in relying on the flawed vocational expert's testimony. (Doc. 20 at 14-16). Specifically, Plaintiff contends that the vocational expert: (1) cited to the wrong DOT position; and (2) the job description is inconsistent with Plaintiff's RFC that limited communication with other workers and limited high-volume production quotas or fast-paced assembly line work. (*Id.* at 14-15). Taking each argument in turn, the Court finds the ALJ properly relied upon the vocational expert's testimony.

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform. *Id*. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

First, Plaintiff argues that the vocational expert erred in providing an incorrect cite to the DOT. (Doc. 20 at 14). The vocational expert determined that Plaintiff is capable of performing the job of fruit distributor that has a DOT # 921.68**7**-046. (Tr. at 72). The actual DOT # for fruit distributor is DOT # 921.68**5**-046. Plaintiff claims that this error is not harmless because the ALJ only identified one job that Plaintiff is capable of performing. The Court finds this argument unavailing. Clearly, the vocational expert misspoke when identifying the DOT # that corresponds to the job of fruit distributor. Moreover, the parties were not under any misapprehension as to the identified job. The Court finds this error harmless. *Pichette v. Barnhart*, 185 F. App'x 855, 856 (11th Cir. 2006) (finding that a remand is not warranted when an ALJ commits harmless error).

Second, Plaintiff argues that the position of fruit distributor requires an individual to communicate with other workers frequently in order to regulate workflow and this requirement contradicts Plaintiff's RFC restriction of "can occasionally engage in team or tandem work." (Doc. 20 at 15; Tr. at 34). At the hearing, counsel specifically asked the vocational expert whether the position of fruit distributor requires an individual to work in tandem with others, with either co-workers or somebody else. (Tr. at 76-77). The vocational expert responded, "No, I don't think they'd do any job tasks that require teamwork or working with other individuals. They're going to be in a facility, obviously that would have other workers, but those other workers are doing other tasks. This, to me, is a task done independently and autonomously." (Tr. at 77). The vocational expert reiterated that for this position, he did not find that the job description "would indicate doing tandem work" and stated again that in his opinion this position did not require tandem work. (*Id.* at 77). The vocational expert clearly testified that in his opinion this position did not require tandem work. Thus, the ALJ may rely on the vocational

expert's opinion that the position of fruit distributor fell within Plaintiff's RFC restrictions of being limited to occasionally engaging in team or tandem work.

Finally, Plaintiff argues that the position of fruit distributor requires an individual to keep up with a constant flow of produce and route it to workers' packing boxes at a high rate of speed and this requirement contradicts Plaintiff's RFC restriction of "occupations that do not require the performance of high-volume production quotas or fast-paced assembly line work." (Doc. 20 at 15; Tr. at 34). In the hypothetical to the vocational expert, the ALJ included the following limitation: "And should avoid performing jobs that require – or should I say, is limited to jobs that do not require her to complete a fixed number of highline production quotas and or fast-pace assembly line jobs." (Tr. at 71). The vocational expert determined that an individual with Plaintiff's RFC restriction, including a restriction as to quotas and pace is capable of performing the job of fruit distributor. The hypothetical posed to the vocational expert included limitations as to quotas and pace and, thus, the ALJ may rely on the vocational expert's testimony.

The Court finds that substantial evidence supports the ALJ's decision to rely on the testimony of the vocational expert to determine that an individual with Plaintiff's RFC restrictions is capable of performing the job of fruit distributor. Thus, the ALJ did not err in relying on the vocational expert's testimony.

**IV.     Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on January 26, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties